UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **JERROD JOHNSON** | **CIVIL ACTION NO. 5:12-cv-2134** |
| LA. DOC #542543 | |
| VS. | **SECTION P** |
| | **JUDGE DONALD E. WALTER** |
| **TIM KEITH, WARDEN** | **MAGISTRATE JUDGE KAREN L. HAYES** |

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

*Pro se* petitioner Jerrod Johnson, a prisoner in the custody of Louisiana's Department of Public Safety and Corrections, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on August 9, 2012. Petitioner attacks his 2007 conviction for armed robbery with a firearm and the hard labor sentences imposed by Louisiana's First Judicial District Court, Caddo Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons, it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d) and/or because petitioner failed to exhaust state court remedies and his claims are now procedurally defaulted.

*Background*

On July 28, 2007, petitioner and his co-defendant Corey Holder were found guilty of three counts of armed robbery with a firearm. On June 3, 2008, petitioner was sentenced to concurrent sentences of 41 years without benefit of parole. [Doc. 1-2, p. 10]

Petitioner appealed his conviction to the Second Circuit Court of Appeals arguing six

assignments of error.[1] On October 28, 2009, the Second Circuit affirmed the convictions and mailed notice of judgment to petitioner's attorney. However, the Court of Appeals, having found patent error with regard to sentencing, remanded the matter to the District Court for the imposition of determinate sentences.[2] [Doc. 1-2, pp. 39-58; *State of Louisiana v. Corey Holder and Jerrod Dewayne Johnson*, 44,386 (La. App. 10/28/2009), 25 So.3d 920.] Petitioner was thereafter resentenced in accordance with the Court of Appeals' ruling on December 10, 2009. [Doc. 22-1, p. 4] According to the presumptively reliable published jurisprudence of the State of Louisiana, petitioner did not appeal the resentencing.

Meanwhile, petitioner filed a *pro se* application for writs in the Louisiana Supreme Court. In that pleading petitioner argued three assignments of error.[3] Petitioner delivered his pleading to

---

[1] Petitioner argued the following: (1) the failure of the State to timely prosecute (La. C.Cr.P. art. 578 et seq.) required dismissal; (2) the Court of Appeals erred when it reversed the trial court's determination concerning the State's discriminatory exercise of peremptory challenges; (3) the Court erroneously denied four of petitioner's challenges for cause; (4) the dismissal of juror Singleton prejudiced petitioner; (5) insufficient evidence to establish that petitioner was present and participated in the May 7, 2004, armed robbery; (6) excessiveness of sentence. [Doc. 1-2, pp. 1-38]

[2] The Court of Appeals made the following observation, "As a threshold issue, however, we note that there is a question as to the specificity of Johnson's sentences as imposed by the trial judge. Johnson was convicted of armed robbery with a firearm, but the trial judge only imposed a single term of 41 years for each offense without imposing a separate sentence for the use of a firearm. This court has previously held that a sentence for the offense of armed robbery with a firearm must consist of a term for the armed robbery offense and a separate consecutive term for the use of a firearm. *State v. Eason*, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685. Accordingly, we pretermit any discussion of Johnson's assignment of error number six and remand the matter for imposition of determinate sentences in accordance with this court's ruling in *Eason, supra*." *State v. Holder and Johnson*, 25 So.3d at 929-930.

[3] Petitioner raised three claims – "(1) Petitioner suffered constitutional deprivation of his right to appellate review of his armed robbery with a firearm conviction when the appellate court through conflicting evidence reviewed evidence of a third party and not petitioner; (2) The

2

his case manager, Ms. Bradley, for mailing to the Supreme Court on December 8, 2009. [Doc. 1-2, p. 72] This writ application was denied without comment by the Supreme Court on December 10, 2010. *State of Louisiana ex rel. Jerod Dewayne Johnson v. State of Louisiana*, 2009-2788 (La. 12/10/2010), 51 So.3d 718. [Doc. 1-2, p. 59] Petitioner did not seek further direct review in the United States Supreme Court.

On May 3, 2011, petitioner filed a *pro se* application for post-conviction relief in the First Judicial District Court. [Doc. 1, ¶7(b)(iii)] Petitioner sought free copies of various court documents (arrest report, pre trial motions, etc.) and transcripts (the preliminary hearing, the trial, sentencing, the charge to the jury, opening and closing arguments and *voir dire*); he also sought post-conviction relief arguing two claims.[4]

On some unspecified date the application was denied [5] and petitioner sought further review in the Second Circuit Court of Appeals. [Doc. 1-2, pp. 104-110] On October 7, 2011, the Second Circuit denied writs and sent notice of judgment to the petitioner.[6]

---

Appellate Court abused its authority when it failed to review the ruling relative to the *Batson* objection raised in this case; and, (3) The Appellate Court erred in ruling that the state proved beyond a reasonable doubt that Jerod Johnson was a principal to the offense of armed robbery with a firearm." [Doc. 1-2, pp. 60-72]

[4] Petitioner argued – (1) ineffective assistance of trial counsel based upon (a) counsel's failure to abide by petitioner's instruction that he not move for a continuance; (b) counsel's failure to move for the suppression of DNA evidence; and, (c) counsel's failure to subpoena a DNA expert hired by petitioner's mother; and, (2) petitioner's Fourth Amendment rights were violated when Detective McWilliams obtained a search warrant for petitioner's DNA without probable cause. [Doc. 1-2, pp. 73-90]

[5] Petitioner did not provide a copy of the trial court's judgment/reasons for judgment denying post-conviction relief.

[6] In denying writs the Court observed, "Petitioner failed to make a showing of particularized need mandating the cost-free production of documents which he is not entitled to

Petitioner then sought further collateral review in the Louisiana Supreme Court in a writ application dated November 8, 2011. [Doc. 1-2, pp. 114-121] The Supreme Court denied writs without comment on June 22, 2012. *State of Louisiana ex rel. Jerrod Johnson v. State of Louisiana*, 2011-2573 (La. 6/22/2012), 91 So.3d 965.

Petitioner signed the instant petition on August 7, 2012; it was received and filed on August 9, 2012. Petitioner now argues five claims for relief.[7]

On September 24, 2012, the undersigned recommended dismissal of the petition as time-

---

of right. [citations omitted] He also failed to meet his burden of proving that post-conviction relief should be granted. [citations omitted] Accordingly, the trial court's ruling denying the defendant's application for post-conviction relief and his request for cost-free production of the trail transcript and search warrant were not in error. The writ application is hereby denied." [*State of Louisiana v. Jerrod Johnson*, No. 46,956-KH, Doc. 1-2, pp. 111-112]

[7] Claim One – "Trial and appellate counsel was ineffective by not seeking writs to the Louisiana Supreme Court involving the State striking of nine black jurors which six were females based upon race and/or sex violating by Sixth Amendment right to an impartial jury selected from a cross-section of my community contrary to and an unreasonable application of facts..."
Claim Two – "Defendants ... were deprived of a fair trial when counsel failed to move to suppress all DNA evidence unlawfully obtained by law enforcement through fraudulent means..."
Claim Three – "The trial court's imposition of three 41 year concurrent sentences based upon six un-adjudicated offenses without sufficient proof I had anything to do with the same violated my due process right to a fair and impartial sentence..."
Claim Four – "Trial counsel was ineffective by moving for a continuance rather than seeking to exclude Brady material resulting in the forfeiture of my right to have the bill of information quashed for violation of my Sixth Amendment right to a fast and speedy trial within two years as mandated by La. C.Cr.P. art. 578(2)."
Claim Five – "The State of Louisiana deprived defendant Johnson a complete copy of his trial proceedings including but not limited to all transcripts and search warrant to take DNA... despite showing a particularized need."

barred by the provisions of 28 U.S.C. §2244(d). [Doc. 4][8] On October 22, 2012, the Court entered judgment accordingly. [Doc. 7]

Petitioner appealed and on July 15, 2013, the Fifth Circuit Court of Appeals, questioning the effect of resentencing with regard to the issue of finality of judgment, remanded for further consideration. *Jerrod Johnson v. Tim Keith, Warden*, No. 12-31183. [Doc. 21][9]

Thereafter on July 29, 2013, petitioner filed a *pro se* motion for equitable tolling. [Doc. 22]

*Law and Analysis*

*1. Limitations – 28 U.S.C. §2244(d)(1)(A)*

As noted in the original Report and Recommendation, Title 28 U.S.C. §2244(d)(1)(A) (as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 or AEDPA) provides a 1-year statute of limitations for the filing of applications for *habeas corpus* by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct

---

[8] The undersigned noted that petitioner's application for certiorari on direct review was not filed in accordance with Louisiana Supreme Court Rule X, §5(a) and was therefore untimely since it was filed more than 30 days after the Court of Appeals mailed Notice of Judgment to petitioner. The undersigned thus determined that petitioner's judgment of conviction and sentence became final by the expiration of the time for seeking further direct review on November 30, 2009, 30 days after the Court of Appeals' judgment.

[9] The Court of Appeals observed, "The federal limitations period does not begin to run until both the conviction and sentence have become final. *Scott v. Hubert*, 635 F.3d 659, 664–65 (5th Cir.2011). The Louisiana appellate court affirmed Johnson's convictions. However, it also remanded the case for resentencing. It is unclear from the record when Johnson was resentenced and whether he appealed the new sentences. Because it cannot be determined from the record when the time for seeking direct review of Johnson's sentences expired, it cannot be determined when the judgment became final for the purpose of addressing whether his § 2254 application is timely. See *id.* at 666." *Johnson v. Keith*, 2013 WL 2897916

5

review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[10]

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). However, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period [see *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] and, of course, the limitations period is tolled only for as long as the state application remains properly filed and thus pending in the state's courts. *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007). Federal courts may raise the one-year time limitation *sua sponte*. *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Petitioner appealed his conviction to the Second Circuit Court of Appeals. On October 28, 2009, his conviction was affirmed and notice of judgment was sent to petitioner's appellate counsel. *State of Louisiana v. Corey Holder and Jerrod Dewayne Johnson,* 44,386 (La. App. 10/28/2009), 25 So.3d 920. As noted in the original Report and Recommendation, pursuant to the provisions of Louisiana Supreme Court Rule X, §5(a), petitioner had a period of 30 days from October 28, 2009, or until November 30, 2009, to file a timely application for writ of

---

[10] Nothing in the record before the court suggests that any State created impediments prevented the filing of the petition. Further, nothing in the record suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. Finally, nothing in the record suggests that the factual predicate of the claims presented was only recently discovered. [See 28 U.S.C. § 2244(d)(1)(B), (C), and (D)].

*certiorari*.[11] Petitioner did not submit his application to prison authorities for mailing until December 8, 2009 [Doc. 1-2, p. 72][12] well beyond the deadline provided by Rule X. In other words, petitioner's writ application was untimely filed and could not serve to extend the date of finality of judgment.

In the meantime, petitioner was resentenced in accordance with the Court of Appeals' order on December 10, 2009. [Doc. 22-1, p. 4] Under Louisiana law, he had a period of 30 days from that date within which to file an appeal,[13] or until January 11, 2010.[14] As noted above, the presumptively reliable published jurisprudence of the State of Louisiana reveals that no appeal

---

[11] Rule X, §5(a) provides: "An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. No extension of time therefor will be granted."

[12] Under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se* prisoner submits the pleading to prison authorities for mailing. *Causey v. Cain*, 450 F.3d 601, 604 (5th Cir.2006) (citing *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Petitioner has been afforded the benefit of the mailbox rule with regard to the applications for *certiorari* filed on direct review and on collateral review.

[13] La.C.Cr.P. art. 914(b)(1) provides, "The motion for an appeal must be made no later than [t]hirty days after the rendition of the judgment or ruling from which the appeal is taken."

[14] December 10, 2009, was a Thursday. The thirty day time period commenced on Friday December 11, 2009, and ended on Saturday, January 9, 2010. Since that date and the following date were legal holidays, petitioner had until Monday, January 11, 2010, to timely file his motion for appeal. See La. C.Cr.P. art. 13 which provides, "In computing a period of time allowed or prescribed by law ... the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday."

was taken from the resentencing, and therefore petitioner's judgment of conviction and sentence became final by the conclusion of the time for seeking further review, at the latest, on January 11, 2010.[15] Petitioner had one year from that date, or until January 11, 2011, to file his federal petition for *habeas corpus*.

Petitioner cannot rely upon statutory tolling as provided in §2244(d)(2) because he did not seek State post-conviction relief until May 3, 2011, when he filed his *pro se* application for post-conviction relief in the First Judicial District Court [Doc. 1, ¶7(b)(iii)], and by that time the AEDPA limitations period had already expired and could not thereafter be revived. As previously noted, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998).

**2. Equitable Tolling**

Petitioner contends that he is entitled to equitable tolling of the limitations period because "[d]espite filing ineffective assistance claims against defense counsel Peter Flowers on direct appeal he was allowed to represent all defendants on remand for resentencing on December 10, 2009, without notice and waiver of conflict-free counsel by the State or him resulting in a denial to appeal the resentence as excessive and based upon unlawfully seized DNA ..." Of course, petitioner is incorrect. Neither he nor his co-defendant alleged ineffective assistance of counsel on appeal. [Doc. 1-2, pp. 1-38] In any event, a claim of attorney error does not support equitable tolling. *United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008); *Cousin v. Lensing*, 310 F.3d

---

[15] Indeed, in his Amended Request for Equitable Tolling filed on July 29, 2013, petitioner conceded that his "... sentence became final 30 days after his resentencing on December 9, 2009." [Doc. 22, p. 1]

8

843 (5th Cir. 2002).

### 3. Exhaustion of State Court Remedies and Procedural Default

Even if petitioner's *habeas* petition was timely, or even if he were afforded the benefits of statutory or equitable tolling, his petition would still be subject to dismissal because petitioner did not fairly present his federal habeas corpus claims to the Louisiana Supreme Court either on direct or collateral review.

Federal *habeas corpus* review of state court convictions is limited by the intertwined doctrines of procedural default and exhaustion of state court remedies. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state court remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

The federal *habeas corpus* statute and decades of federal jurisprudence require a petitioner seeking federal *habeas corpus* relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999); *Whitehead*

*v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5 Cir.2001); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir.1998) citing *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir.1985); *Mercadel*, 179 F.3d at 275 citing *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); *Deter v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk*, 144 F.3d at 360 citing *Richardson*, 762 F.2d at 431-32. In Louisiana, the highest court is the Louisiana Supreme Court. *See* LSA – Const. Art. 5, §5(a) ("The Supreme Court has general supervisory jurisdiction over all other courts...")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

Petitioner raised his *habeas* claims in either the direct appeal process or in his application for post-conviction relief. However, as previously shown, petitioner's writ application on direct

review was untimely, and, as is shown below, so was his writ application seeking review of the denial of his application for post-conviction relief.

Petitioner filed a *pro se* application for post-conviction relief in the First Judicial District Court on May 3, 2011. [Doc. 1, ¶7(b)(iii)] The post-conviction proceeding remained properly filed and thus pending until October 7, 2011, the date the Second Circuit Court of Appeals denied writs and sent notice of judgment to the petitioner. [*State of Louisiana v. Jerrod Johnson*, No. 46,956-KH, Doc. 1-2, pp. 111-112] Once again, petitioner had 30 days from that date to timely petition the Louisiana Supreme Court for further collateral review, or, until November 7, 2011. However, petitioner's writ application was dated and signed on November 8, 2011[16] [Doc. 1-2, pp. 114-121] and was thus untimely under the provisions of Rule X, §5(a).

In other words, petitioner did not properly present any of his federal *habeas corpus* claims to the Louisiana Supreme Court on either direct or collateral review since in both instances he filed his pleadings in the Louisiana Supreme Court after the thirty-day deadline established by Rule X, §5(a) had elapsed.

### *Procedural Default*

As outlined above, petitioner failed to exhaust available state court remedies when he failed to timely seek further direct and collateral review in the Louisiana Supreme Court. However, it also appears that petitioner would be unable to return to the Louisiana courts to fully exhaust remedies in a second round of post-conviction relief. La. C.Cr.P. art. 930.4 generally prohibits successive or repetitive petitions. Thus any claim for relief filed at this point would

---

[16] See fn 12, *supra*. In the absence of evidence to establish the date petitioner presented his writ application to prison authorities for mailing, it will be presumed that the EARLIEST date he could have done so was the date he signed his pleading.

likely be rejected under one or more of the grounds listed in the article. Further, art. 930.8 provides a two-year period of limitation for filing applications for post-conviction relief, generally reckoned from the date of finality of judgment. Petitioner's judgment of conviction became final pursuant to La. C.Cr.P. art. 922(D) more than two years ago.[17] Therefore, even if he could hurdle the barrier imposed against successive applications, any attempt to file a second round of post-conviction relief would be doomed to failure as time-barred.

Thus, while State court remedies with respect to petitioner's *habeas* claims were not exhausted, these claims can be said to be "technically exhausted" since State court remedies are no longer available. A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present it to the state courts and is thereafter barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348 (5th Cir.1998) citing *Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies, because he has allowed his federal claims to lapse, those claims are considered "technically" procedurally defaulted. *Id.*

Generally, federal *habeas* courts may not review the merits of these technically exhausted but procedurally defaulted claims unless the petitioner demonstrates that he should be excused

---

[17] The absolute latest date that petitioner's judgment of conviction and sentence could be considered final under Louisiana law is December 10, 2010, the date the Louisiana Supreme Court denied writs on direct review. *State of Louisiana ex rel. Jerod Dewayne Johnson v. State of Louisiana*, 2009-2788 (La. 12/10/2010), 51 So.3d 718. [Doc. 1-2, p. 59]

from application of the procedural default doctrine. This he can do by showing proper exhaustion of his state court remedies, or, failing that, by showing either cause and prejudice or that a miscarriage of justice will result from the denial of federal *habeas corpus* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, *supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) quoting *McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

### *Cause and Prejudice*

In *Murray v. Carrier*, the Supreme Court explained that "cause" in this context refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard. *Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted)."

Clearly, the cause of the defaults identified above was petitioner's failure to timely present the substance of his federal *habeas corpus* claims to the Louisiana Supreme Court on both direct and collateral review. These failures were clearly not "... an impediment <u>external</u> to

the defense..." Thus, petitioner has thus far not shown "cause" for his default, and, if a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

Nevertheless, with respect to each of the defaulted claims identified above, petitioner has also failed to demonstrate prejudice.

### *Miscarriage of Justice*

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, he must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting *McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Other than his self-serving and conclusory allegations to the contrary, petitioner has not shown that a fundamental miscarriage of justice would result from this Court's failure to consider his unexhausted but procedurally defaulted claims.[18]

---

[18] Indeed, the Court of Appeals' "Statement of Facts" on appeal suggests overwhelming evidence of petitioner's guilt.

"Late on the night of May 7, 2004, a group of three or four men robbed three employees at the Thrifty Liquor Store on Linwood Avenue in Shreveport. The robbers were dressed in black and wore masks and gloves. The victims identified the robbers as black males. Armed with a variety of firearms, the men forced the victims to the floor before taking several items of value from

*Recommendation*

This petition is time-barred by the provisions of 28 U.S.C. §2244(d) and petitioner is not entitled to either statutory or equitable tolling. In addition, and, in the alternative, petitioner's various claims for *habeas corpus* were not properly presented to the Louisiana Supreme Court; his claims are technically exhausted but now procedurally defaulted and petitioner has shown neither cause, prejudice, nor actual innocence.

---

them and money from the cash registers. After taking the valuables, the men fled the store and got into a white Buick sedan.

A passerby called police after seeing the armed men at the liquor store and two officers from the Shreveport Police Department ("SPD"), Keith Sharrah and Trey Robinson, responded immediately. The officers pursued the Buick and their patrol car dash camera captured footage of the chase. When the Buick reached the end of a dead-end street, the robbers stopped, exited the vehicle and fled on foot.

During the pursuit on foot, the robbers discarded several masks, gloves and weapons. One of the robbers pointed an SKS rifle at the officers and both officers fired at the robbers. Additional SPD officers responded, including a K–9 unit, in an effort to apprehend the robbers. The police dog pursued and bit one of the fleeing robbers twice, but the robber was able to get away from the dog. One SPD officer, who was 6'2" tall, described the robber who was bitten as much larger than himself. Ultimately, all of the suspects escaped on foot. Police later found two blood-stained shirts along the path taken by the man who had been bitten. On searching the Buick, police found a bank bag from the liquor store, a walkie-talkie, duct tape and a ski mask.

Subsequent investigation led the police to determine that Defendants were the suspects in this case. DNA testing matched Holder, who is 6'6" tall, to the bloody shirts and matched Johnson to a ski mask and a glove found along the path of the foot chase. In addition, Holder was found to have pronounced scars on his body at the places where the fleeing robber was bitten by the police dog. One SPD officer identified Holder as resembling the man bitten by the dog. Another officer, however, believed the person bitten by the dog was shorter and identified another man in a lineup. Further investigation led to a storage unit rented by Johnson and a search of this unit uncovered an instruction manual for the type of walkie-talkie that was found in the Buick."

*State of Louisiana v. Corey Holder and Jerrod Dewayne Johnson*, 25 So.3d at 922-23.

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** as time-barred and/or because petitioner failed to exhaust available state court remedies and his federal claims are now procedurally defaulted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District**

16

**Judge at the time of filing.**

In Chambers, Monroe, Louisiana, August 13, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE